# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 17, 2013 Session

## JEREMIAH R. KEY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 100204     Jon Kerry Blackwood, Judge**

---

**No. E2013-00744-CCA-R3-PC - Filed February 14, 2014**

---

Petitioner, Jeremiah R. Key, sought post-conviction relief from his guilty-pleaded convictions for aggravated robbery, second degree murder, and coercion of a witness. The post-conviction court denied relief after an evidentiary hearing. On appeal, petitioner raises the following issues: (1) ineffective assistance of counsel for failure to adequately communicate with petitioner; (2) ineffective assistance of counsel for failure to ensure that his guilty pleas were voluntarily entered; and (3) involuntariness of his guilty pleas. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Forrest L. Wallace, Knoxville, Tennessee, for the appellant, Jeremiah R. Key.

Robert E. Cooper, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Randall Eugene Nichols, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This post-conviction case stems from petitioner's guilty-pleaded convictions for aggravated robbery, second degree murder, and coercion of a witness, for which he received consecutive sentences of ten years, twenty years, and four years, respectively. Pursuant to the plea agreement, petitioner entered a guilty plea to second degree murder, a lesser included offense of the indicted charge of felony murder. The State also dismissed the additional counts of the indictments in each case.

## I. Facts

### A. Facts from the Guilty Plea Submission Hearing

At the January 10, 2012 plea submission hearing, the State submitted that its proof against petitioner in support of the aggravated robbery charge consisted of the victim's testimony, in which he would have identified petitioner, although masked, by his "very distinctive eyes" that were visible through the ski mask. One of the victim's neighbors witnessed two individuals in a black Jeep Cherokee who were behaving suspiciously. He observed them change the vehicle's license plate before fleeing the scene. This neighbor also obtained a partial license plate number from the Jeep that matched the vehicle owned by petitioner's brother. Petitioner's brother gave a statement to police that placed petitioner at the crime scene. Finally, when questioned about his involvement in a subsequent unrelated murder, petitioner commented to an officer that he did not commit the murder but that he robbed the victim in this case.

With regard to the second degree murder charge, the State's evidence at trial would have established that the victim, a known drug dealer, was shot and killed. A witness was present in the victim's residence when a masked intruder entered and demanded that the victim lie on the ground. The victim resisted and was shot during the ensuing struggle. Petitioner's brother drove him to that location knowing that petitioner's intent was to rob the victim. He witnessed petitioner in possession of a mask, gloves, and a silver weapon. The mask and gloves were recovered, and DNA evidence confirmed that they belonged to and had been worn by petitioner.

The evidence underlying the charge of coercion of a witness consisted of an investigator's testimony with regard to placing petitioner's brother, Joe Key, under subpoena, Mr. Key's failure to appear in court as directed on the first day of trial, and the summary of the telephone call that petitioner placed to his grandmother on the night before the trial began, wherein he encouraged his grandmother to assist Joe Key in leaving the area.

At the plea submission hearing, petitioner acknowledged that he understood his rights, that he voluntarily waived his rights, that he had no complaints about trial counsel's representation of him, and that he had no questions.

### B. Procedural History

Petitioner filed the instant petition for post-conviction relief on August 29, 2012. Appointed counsel did not file an amendment. The post-conviction court held a hearing on the petition on February 25, 2013.

C. Facts from Post-Conviction Hearing

Petitioner testified that he filed the instant petition for post-conviction relief because he felt "forced" into accepting the State's plea offer. He stated trial counsel informed him that his younger brother Joe Key, who had failed to appear as a witness on the first day of trial, and his grandmother were going to be arrested immediately if he did not accept the State's offer.

Petitioner recounted that trial counsel was appointed to represent him at the general sessions level. He recalled that his robbery case was dismissed following the preliminary hearing due to a flawed eyewitness identification. He was surprised when he was indicted because he thought that the dismissal marked the conclusion of the matter. According to petitioner, trial counsel had never indicated that he could be indicted in criminal court following the dismissal in general sessions court. Despite his case being dismissed, petitioner remained in jail due to a detainer against him issued by North Carolina.

Petitioner agreed that he was indicted for robbery on May 3, 2011, and for an unrelated felony murder on May 31, 2011. Prior to the setting of the first trial, counsel visited petitioner approximately five or six times at the jail for around twenty to thirty minutes each time, but he was always accompanied by another person or persons.

Petitioner stated that his defense at the robbery trial, which was scheduled first, was going to be that he was not guilty of the charges. Trial counsel discussed some of the State's evidence against him, namely a mask and gloves that contained his DNA as well as DNA from others. Petitioner testified that he was not aware of any proof that trial counsel planned to offer. Moreover, he said that he was not advised about the strengths and weaknesses of his cases.

Petitioner recalled that prior to trial, the State offered to settle his cases in exchange for a ten-year sentence for robbery and a twenty-year sentence for second degree murder, but he declined the offer. On the second day of the trial, the State offered the same agreement but added a charge of coercion of a witness and an additional four-year sentence for that offense. He claimed that trial counsel told him that if he did not accept the State's offer, his grandmother and younger brother, both of whom were present in court, would be arrested for coercion and obstruction of justice. He did not have sufficient time to consider the offer, but he accepted it in an effort to "protect [his] family." Petitioner stated that he did not want to accept the offer because he was innocent of the charges.

Petitioner testified that prior to his entering the plea, he and trial counsel reviewed some of the plea agreement documents. Petitioner said that he had no questions for trial

counsel at that time. He did not recall reviewing each of the seven pages of the plea agreement. Petitioner stated that he answered affirmatively during the plea submission hearing because "if [he] would have answered any different[ly], then [he] wouldn't have been able to accept the plea and [his] family would have been locked up . . . ." In sum, petitioner explained that he felt "let down" because he had been prepared to go to trial.

Petitioner confirmed that trial counsel instructed that if petitioner did not accept the plea agreement on the second day of trial, the State would have his grandmother and younger brother arrested. He said that trial counsel conveyed that the State would arrest his brother on the same charges for which petitioner was arrested. In addition, his grandmother would be arrested on charges of coercion of a witness and obstruction of justice. Petitioner maintained that the basis for the charges stemmed from a telephone call he placed on the night before trial. Petitioner claimed that in the call, he told his grandmother that his brother did not want to come to court and that he asked her to give his brother some money with which he could leave the area. Petitioner said that his brother had confided in him during a visit that the State "was trying to make him say things that he didn't want to say[] [and] that he didn't want to come to court." Petitioner recalled that when trial counsel explained the new developments to him, his voice sounded calm.

The State called trial counsel as a witness. Trial counsel testified that he had been a criminal defense attorney for seventeen years and that he had handled over thirty-six first degree murder cases and over 150 jury trials. During the course of his representation of petitioner, trial counsel prepared him for his trial both personally and by use of an investigator, to whom he entrusted the responsibility of reviewing the evidence with petitioner. In response to petitioner's complaint that trial counsel was always accompanied by someone else, he stated that the first thing he would do when visiting a client in the presence of a third party was to remind the client that attorney/client privilege extended to the third party, as well. By doing so, he sought to make the client feel more comfortable speaking to an investigator.

Trial counsel testified that he prepared petitioner for both of his cases and reviewed all of the evidence with him, including DNA evidence and witness statements. He recalled that his opinion was that the State's case was strong and that he thought petitioner would be convicted in both cases. As such, he believed that the plea offer was generous, considering petitioner's status as a Range II offender. Trial counsel thought, at one time, that petitioner was going to accept the offer, but petitioner then decided that if he could prevent his brother from appearing, "that would change the tide." However, trial counsel opined that even without the testimony of petitioner's brother, they were going to lose both cases. Trial counsel recalled:

-4-

I remember doing voir dire, we were aware [petitioner's brother] wasn't there. Frankly, I remember thinking, now I know why we're going to trial. And I remember [the State] telling the Court that this was a critical witness and that [the State] wanted time – [the State] didn't want the jury sworn, so we . . . agreed that we would pick the jury, send them home[,] and the State would have that afternoon and evening to try to find this witness.

And . . . I met with him and said, "I hope you know what you're doing. Because they are going to find [him]. And if they do, God help us."

Trial counsel stated that the following morning, the State approached him with a computer disk containing a recording of a telephone call between petitioner and his grandmother the Sunday night prior to trial, during which he instructed his grandmother to "get Joe out of town." Futhermore, trial counsel recalled that when the trial judge saw petitioner's brother in the courtroom on Tuesday morning, he was very upset. Pursuant to the court's order, Joe Key was placed in handcuffs. Trial counsel retreated to the holding cell adjacent to the courtroom where he told petitioner that his brother was present and that the State had a recording of the telephone call he had placed. According to trial counsel, petitioner reacted with his "[m]outh open like, [']][O]h.['] All right. No denial. I mean, you know, a taped phone call is a taped phone call."

Trial counsel recalled that at that time, he did not tell petitioner that his brother or grandmother would be arrested. Before the trial resumed, trial counsel met with the State and asked for the plea offer to be extended again. Trial counsel was surprised when the State agreed and only added four years for the coercion charge. He communicated the offer to petitioner, who, at that point, only knew that his brother was present in the courtroom. Petitioner asked if his brother would be in trouble for not appearing the previous day, and trial counsel responded that he would not, pursuant to his discussion with the assistant district attorney general. Trial counsel explained that because of the last-minute nature of the plea agreement, he and the State had to seek approval from the trial court. During that conversation, trial counsel recalled that he asked that Joe Key be released from handcuffs because, if not, petitioner would later attack his guilty plea by claiming that it was coerced. He said, "I was very careful about that." According to trial counsel, petitioner never knew that his brother had been in handcuffs or that he was in custody.

On cross-examination, trial counsel stated that he prepared for the robbery case by meeting with petitioner, reviewing the warrant, educating himself about the State's evidence, and conducting a preliminary hearing. After the case was dismissed in general sessions court, trial counsel explained to petitioner "right away" that he could still be indicted in criminal court. He communicated this in person, as it was his policy to not write letters. The

State ultimately indicted petitioner on the robbery charge and obtained an additional indictment for felony murder in an unrelated case.

Trial counsel stated that he represented petitioner at the arraignments. The first matter he undertook was explaining the charges and the ranges of punishments for each charge. He secured funds for a private investigator and accompanied him to the jail to meet petitioner. Trial counsel confirmed that although petitioner did not receive a copy of the motion for discovery, petitioner had an opportunity to review all of the discovery they had received.

Based on his review of the case, trial counsel prepared a "pros and cons" list of the case to discuss with petitioner. He opined that the list in favor of the State's case was much longer than the list in favor of the defense. He reviewed all of the evidence with petitioner. Together, trial counsel and petitioner decided that he would not testify at either trial because of his extensive criminal record.

With regard to the plea agreement, trial counsel testified that in his opinion, "when [petitioner] knew his brother was here, he caved . . . he knew the problem. When he knew his brother was here, he resigned to it." He remembered that petitioner's response to the State's having learned of the content of the telephone call was "shock." When petitioner accepted the plea offer, trial counsel reviewed the plea documents with him, though "not word for word." After the trial court accepted the plea, petitioner was removed from the courtroom. At that time, the trial court addressed Joe Key and petitioner's grandmother and "politely chastised" them for their conduct. Petitioner was not in the room to witness any interaction between the trial court and his family members.

At the close of the proof, the post-conviction court announced that it found petitioner's guilty pleas to be voluntary and that trial counsel was not ineffective. The post-conviction court summarized its holding in a written order dated March 4, 2013. This appeal follows.

## II. Analysis

In this appeal, petitioner raises three issues: (1) ineffective assistance of counsel in failing to adequately communicate with petitioner and advise him of developments in his case; (2) ineffective assistance of counsel in failing to ensure that petitioner's guilty pleas were voluntarily entered; and (3) involuntariness of his guilty pleas.

A.  Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103.  A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence.  Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)).  Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)).  The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169  (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)).  However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)).  As mixed questions of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)).  When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted).  It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

"[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

*Strickland*'s two-part test also applies to guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Pursuant to *Hill*, the issue with regard to guilty pleas is whether, absent counsel's deficiency, petitioner would not have pleaded guilty but would have insisted upon going to trial. *Id*. at 59.

B. Claims

1. Failure to Adequately Communicate with Petitioner

Petitioner argues in his brief that trial counsel failed to adequately communicate with him and advise him of developments in his case. In denying relief on this claim, the post-conviction court credited the testimony of trial counsel:

Trial counsel testified that he constantly communicated with Petitioner and kept him informed of the developments in the case. He explained to Petitioner that his case would be taken to the grand jury on the robbery charge and that a felony murder charge would be added. Trial counsel further

testified that he devoted the entire week before trial working with Petitioner on his case. More importantly, trial counsel explained in his testimony the evidence against Petitioner and his discussion with him.

The post-conviction court was in the better position to assess the credibility of witnesses, and we will not disturb the court's determination in this regard. *Dellinger*, 279 S.W.3d at 292. Moreover, petitioner has not demonstrated that he was prejudiced by trial counsel's alleged failure to adequately communicate with him or apprise him of developments in his cases. Moreover, even if trial counsel had visited more often, "[b]ecause . . . petitioner has failed to satisfactorily prove how this lack of communication might have affected the results of the trial, no relief can be granted on this basis." *Brimmer v. State*, 29 S.W.3d 497, 511 (Tenn. Crim. App. 1998). Petitioner is not entitled to relief on this claim of error.

### 2. Failure to Ensure that the Guilty Pleas Were Voluntarily Entered

Petitioner further posits that he reluctantly accepted the plea agreement because trial counsel advised him of his family members' possible incarceration. To that end, we glean that he is asserting that trial counsel rendered ineffective assistance of counsel by failing to ensure that his guilty pleas were voluntarily entered. The post-conviction court denied relief, stating:

> Petitioner was aware that his only hope in light of the overwhelming evidence was that his brother would not appear. To that end, he devised the scheme to get his brother out of town. Faced with the reality of his failed ploy, the Petitioner entered a plea that was very advantageous to him in light of the evidence.

Trial counsel testified that the State's plea offer was generous, especially in light of petitioner's criminal history. At some point, trial counsel believed that petitioner would accept the plea, but he later ascertained that petitioner intended to go to trial on the belief that his brother would not appear to testify. When petitioner learned that his brother had, indeed, appeared on the second day of trial, he appeared "shocked" and "resigned," as characterized by trial counsel. Moreover, trial counsel testified that petitioner never saw his brother in handcuffs. He also stated that petitioner's grandmother was never handcuffed. Trial counsel assured petitioner that his family members would face no legal repercussions. Petitioner's testimony that he believed that his family members were subject to impending criminal charges and incarceration was not credited by the post-conviction court, and we will not disturb its credibility findings. *Dellinger*, 279 S.W.3d at 292. Petitioner is not entitled to relief on this claim.

## C. Voluntariness of Guilty Pleas

Petitioner also advances a free-standing claim challenging the voluntariness of his guilty pleas. A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904).

Petitioner concedes that the plea submission hearing satisfied constitutional muster. However, he asserts that trial counsel conveyed that his family members would possibly be incarcerated if he did not accept the plea, which violated the prohibition against use of coercion. The record does not support this factual allegation.

Moreover, petitioner's testimony at the post-conviction hearing was in direct conflict with his testimony at the guilty plea hearing. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). In this case, the post-conviction court credited petitioner's testimony during the guilty plea hearing over his testimony at the post-conviction hearing. In sum,

> [t]he evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of 'Buyer's Remorse,' in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002). Petitioner is not entitled to relief on this issue.

## CONCLUSION

Based upon the arguments of counsel, the parties' briefs, applicable legal authority, and the record as a whole, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE